SEALED

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2017 MAR -7  PM 3: 07

DEPUTY CLERK____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, and **MARIA DEL CARMEN GAMBOA FERGUSON** | § § § | Civil Action No. _____ |
| Plaintiff/Relator | § § | **FILED UNDER SEAL** |
| -v- | § § | *JURY DEMANDED* |
| **LOCKHEED MARTIN AERONAUTICS COMPANY, LOCKHEED MARTIN CORPORATION d/b/a LOCKHEED MARTIN AERONAUTICS COMPANY** | § § § § | **3-17CV0664-B** |
| Defendants. | § § | |

## QUI TAM ORIGINAL COMPLAINT

*TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:*

RELATOR *MARIA DEL CARMEN GAMBOA FERGUSON* (hereafter "Ferguson"), brings this qui tam action in the name of the United States of America, pursuant to 31 U.S.C. § 3729 *et seq.*, as amended (False Claims Act) to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States.

## I.
## SUMMARY INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States of America for violations of the False Claims Act. This action arises out of Defendant Lockheed Martin Corporation d/b/a Lockheed Martin Aeronautics Company and/or Lockheed Martin Aeronautics Company's (hereafter collectively "LMAero") actions in overcharging the United States of America (hereafter "USA") on several large defense contracts. LMAero has

accomplished this via the knowing and systematic certification and/or passing through of unsupported and/or inadequately verified domestic and/or offshore subcontract pricing claims for labor, material and/or buildings for the purpose of generating higher revenues at the expense of the USA and the American taxpayer.

2.  The False Claims Act was enacted during the Civil War. Congress amended the False Claims Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization. Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

3.  The False Claims Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.

4.  The Act allows any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to share in any recovery. The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

5.  This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S.C. §3729, et seq., as amended.

## II.
## PARTIES

6.  Relator Ferguson is an individual who is a citizen and resident of the State of Texas.

7.  The United States can be served with this lawsuit through the United States Attorney General and the United States District Attorney for the Northern District of Texas.

7.  Defendants are corporations doing business in this judicial district and can be served with process upon their agent for service of process: <u>Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701</u>.

## III.
## JURISDICTION AND VENUE

8.  Jurisdiction is proper in this Court because this is a federal question action, 28 U.S.C. § 1331, arising under the False Claims Act, 31 U.S.C. § 3730(b).

9.  LMAero is a corporation doing business in Tarrant County, Texas.

10.  There have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. § 3730(e).

11.  Venue is appropriate in this Court, pursuant to 28 U.S.C. § 1391, because the acts giving rise to this case occurred in this judicial district.

## IV.
## FACTUAL ALLEGATIONS

12.  Ferguson has personal knowledge of all of the following facts, which she learned in the course and scope of her employment at LMAero.

13.    This action centers on LMAero's actions in overcharging the USA on several large defense contracts. More particularly, this action arises out of LMAero's systematic purposeful lax and misleading oversight over fraudulent domestic and/or offshore subcontractor pricing submissions under several USA defense contracts. The amount of overcharges easily many millions of dollars and is actively continuing.

14.    LM Aero Supply Chain Management and Executive leadership support and encourage the inadequate verification of supplier costs (cost analysis) resulting in overcharging to the government for the purpose of generating higher revenues for the company. Cost analysis on second and lower tier suppliers over the Truth in Negotiations Act, 10 U.S.C. § 2306 *et seq.* (hereafter "TINA") threshold are systematically not being enforced or validated by LMAero as required to ensure that proposed costs at those levels comply with the appropriate Federal Acquisition Regulations (hereafter "FAR") requirements and excessive/unallowable charges are not passed on to the USA.   This results in a layering phenomena where the overcharging at multiple levels further compounds LMAero's realized revenues and profits at the expense of the USA, as the USA is particularly vulnerable with suppliers whose cultures embrace as shrewd that which the FAR, via TINA and the prime contract clauses, treats as fraud.

15.    LMAero's actions relating to the above include the following, by way of a few pertinent examples and not exhaustion:

A.    As enforced through TINA and prime contract clauses, FAR 15.404-1 requires LMAero to perform adequate Price and Cost Analysis on its suppliers in support of costs submitted in its proposals to the USA.  By systematic design, LMAero does not validate that its sub-tier suppliers perform adequate price or cost analysis of their subcontractors nor does LMAero perform adequate cost analysis on their suppliers when required.  The effect of this

defective pricing strategy is that LMAero yields profit and overhead on the excessive costs that it is passing through to the USA.  LMAero systematically accomplishes this in several ways:

1. LMAero leadership has reduced its internal Subcontract Audit Group size and scope of activities to reduce the impact the group is having on revenues resulting from the disallowance of supplier overcharging. LMAero has undertaken this action in response to the fact that the Subcontract Audit Group, under Ferguson's leadership, has uncovered and internally identified to LMAero management numerous instances over the course of several years in which:

   a. LMAero has, and still is, knowingly passing through inadequately or non-validated supplier costs to the USA on a large and systematic scale;

   b. LMAero  knowingly does not require nor validate that suppliers perform cost analysis on their suppliers as required by TINA and/or misleads the USA about whether such analysis has or will occur;

   c. multiple incidents were identified by Ferguson and reported internally to LMAero wherein LMAero reported/certified to the USA that it had validated suppliers' direct labor hours and other cost/price data, when in fact internal audits reveal that it had not or had not adequately done so or never would do so;

   d. multiple incidents were identified by Ferguson and reported internally to LMAero wherein LMAero repeatedly and knowingly submitted cost and pricing data which states that they have reviewed suppliers Bills of Materials when in fact internal audits reveal they have not so;

e.  multiple incidents were identified by Ferguson and reported internally to LMAero wherein LMAero did not ensure that suppliers' accounting systems were adequate to capture costs/price or labor hours on government contracts prior to contracting actions. LMAero knows that suppliers often have systems which do not accurately capture direct labor hours and due to these inadequacies are used or knowingly allowed to support fraudulent costs/price within the contract rates structures;

f.  LMAero encourages the use of cost analysis by the DCAA/DCMA with the knowledge that in most instances, the Defense Contract Audit Agency (hereafter "DCAA") is resource constrained and not able to complete an audit on offshore suppliers, resulting in unchallenged indirect cost elements of the proposal and decrements averaging only 5% when audits are completed but which decrements are repeatedly found to be at a substantially higher percentage when audited internally. When costs are not audited, suppliers pass on indirect costs which remain unchallenged and overcharging occurs;

g.  LMAero continues to systematically engage in business with suppliers that it knows have defective cost controls without requiring that the suppliers correct their systems or practices and continues to certify the resulting pricing to the USA as part of the government contract;

h.  In response to the actions of Ferguson in exposing, complaining about and opposing the foregoing fraudulent actions involving LMAero to its management over the course of several years, LMAero has systematically

retaliated against her through a series of demotions and/or the shrinking

of the Subcontract Audit Group she manages and a via significant ongoing

reduction in her employment compensation.

16.    Ferguson is aware of the following large government contracts wherein the foregoing

actions have occurred and/or are continuing to occur as follows:

   A.    KONGSBERG DEFENSE and AEROSPACE ("KDA") – Norway

Production for Vertical Tail Leading Edge (VLE) and Rudder (F-35 Program)
Proposal Number: PROP-K-630550
Prime Contract :        N00019-14-C0002; N00019-15-C-003
PROPOSAL AMOUNT:      $125,648,665
DATE:  October 13, 2014
DCMA Case Number:  SGR18A150018
POP LRIP 9 – APRIL 2015 through JANUARY 2017
POP LRIP 10 – MAY 2015 – FEBRUARY 2018

1.) On or about October 23, 2014, LMAero received a noncompetitive proposal

in the amount of $125 Million from KDA for LRIP 9 and LRIP 10, which

exceeded the TINA threshold and, thus, required a rate audit (cost analysis).

LMAero Supply Chain then requested a DCAA audit of the KDA's rates and

factors.  In February 2015, a Price Negotiation Memorandum ("PNM") was

prepared by LMAero wherein it agreed to a 7.21% decrement for LRIP 9 and

a 10.1% decrement to overall costs for LRIP 10.  As per the PNM, these

results were subject to downward adjustment pending the results of the

requested DCAA audits. In fact, LMAero received the DCAA Audit results

(SGR18A150018) in July of 2015, resulting in an additional 23%

recommended decrement to total KDA proposed costs exclusive of the

previously imposed decrement to costs related to direct material and labor.

The total decrement based on the DCAA report would have approximated

31%.  However, the February 2015 PNM LMAero submitted to the USA in support of LRIP 9 negotiations was never updated by LMAero to account for the received 26% DCAA recommended decrement for LRIP 9.

2.) In March of 2016, the DCAA released an updated audit (SGR18A150018), modifying the decrement from 23% to 9.9% for rates and factors only.  9.85% for LRIP 9 and 9.95% for LRIP 10.  Once again, LMAero made no update to the original February 2015 PNM it had submitted to the USA in support of LRIP 9 negotiations.  The modification to 9.9% would have approximated an overall reduction of 18%.

3.) In late 2016 and into early 2017, when the USA negotiated LRIP 9 and LRIP 10 with LMAero, the PNM and Price Cost Analysis Memos ("PCAM") stated, incredulously, that DCAA audits had been requested but never received. These were intentional false statements. To date,  LMAero has never updated the original February 2015 PNM to reflect its receipt of the DCAA results, despite the results being long known and reasonably available to LMAero.

4.) Additionally, during a February 2017 audit of KDA, Ferguson  identified that a 3% scrap rate had been given to KDA by LMAero based on speculation that the possibility existed for them to incur scrap for a new supplier. No documentation supported the 3% scrap on both material and labor.  During the February 2017 audit, KDA disclosed to Ferguson that the scrap and material dollars were already included in the production hours and material estimates upon which the BOE's for LRIP 9 through 11 were based.  With scrap already incorporated in the labor hours and material dollars, the additional scrap rate

of 3% has no basis and has resulted in false claims being paid by the USA. This practice utilized by LMAero Supply Chain, which Ferguson has repeatedly observed in other similar contracts employed by supply chain, give the supplier additional revenues, at the expense of the USA and the American Taxpayer, that have already been paid in the bill of material or the material handling rate; this is essentially double-dipping. These unallowable costs were, and continue to be knowingly being passed on by LMAero to the USA in LRIP 9 and LRIP 10 without the government's knowledge.

5.) Furthermore, LMAero has knowingly permitted KDA to aggressively depreciate its assets over the anticipated LRIP contracts through LRIP 12. This aggressive depreciation is reflected in the LRIP 9 through 11 proposals and is violative of the FAR principle of recovering the cost of assets over their useful lives. This is yet another way that KDA, with LMAero's knowledge, has overcharged the USA in this contract.

6.) In short, the DCAA's audit results that LMAero received in May 2015, and April 2016 constitute cost and pricing data. LMAero had the audit results in its possession a year prior to the date of agreement with the USA on pricing that was reached in late-2016/early-217. The PNM ad PCAM submitted to and relied upon the USA as support for the proposed Bill of Material price for KDA contained deliberately inaccurate and non-current information and data. The undisclosed data was of material significance to the USA's agreement on price and was of the type and nature that the USA would have reasonably expected it to have an impact on price negotiations. The USA relied on that

misleading information to its detriment in the form of increased contract price. Coextensive with this misrepresentation to the USA, LMAero has been unable to reach an agreement with KDA to accept the significant reduction of contract monies paid to KDA on submitted contract claims for payment that would otherwise be required by the DCAA audit results.

7.) The connection between these two events is the execution of a deliberate LMAero perpetrated scheme to pass the buck onto the American Taxpayer by enabling throughout the life of LRIP 9 and LRIP 10 the continuing fraudulent overcharging of approximately $10 million in contract claims to KDA in violation of TINA/FAR.

B.    ELBIT SYSTEMS LIMITED ("ESL") #1 – Israel

Contract : FA8625-11-C-6597
Proposal Values: $9,472,787
Proposal Number:  12-9496
Proposal Date:  June 18, 2012
PMN# C-130-12457
PCAM Date: August 23, 2012
C-130 MY 2.1 (C-130 Program)
POP 2015-2019

1.) In 2013, ESL submitted a noncompetitive proposal to LMAero which exceeded the TINA threshold and, thus, required a rate audit (cost analysis). ESL granted LMAero permission to perform the rate and factor audit.  In May 2013, Ferguson's Subcontract Audit group performed the audit resulting in a 9% decrement exclusive of direct labor hours or direct material decrements. The decrements taken against ESL were due in large part to unallowable vehicle costs.  Ferguson's audit uncovered the fact that ESL provides vehicles to their employees as a benefit of employment.  ESL indicated that they would

not agree to a decrement as indicated by the audit results, but yet, LMAero Supply Chain nonetheless stated in the PNM and PCAM that the audit results had been integrated therein. In fact, the overall decrement to the proposal did not account for the audit results. More specifically, the PCAM only reflected a reduction in the scrap price rate, but did not account for the large vehicle disallowance at all.

2.) In short, the cost analysis audit performed by Ferguson's LMAero Subcontract Audit group is known cost and pricing data. While the PCAM discussed the reduction of scrap, it did not disclose the large decrement due to unallowable vehicle expenses that were the largest contributing factor to the 9% decrement. The PNM and PCAM submitted to the USA in support of the Bill of Material price for ESL contained false, inaccurate and non-current information. The undisclosed data was of material significance to agreement on price and was of the type and nature that the USA would have reasonably expected to have an impact on price negotiations. The USA relied on that information causing an increase in the contract price to its financial detriment. Coextensive with this misrepresentation to the USA, LMAero has been unable to reach an agreement with ESL to accept the significant reduction of contract monies paid to ESL on submitted contract claims for payment that would otherwise be required by the above audit results.

3.) The connection between these two events is the execution of a deliberate LMAero perpetrated scheme to pass the buck onto the American Taxpayer by enabling throughout the life of this contract the continuing fraudulent

overcharging of millions of dollars in contract claims to ESL for unallowable employee vehicle expenses in violation of TINA/FAR.

C.    ELBIT SYSTEMS LIMITED ("ESL") #2 – Israel

Proposal date – December 22, 2014
Proposal Value – ESL for ESW - $9,204,577
RFP # JSFLRIP9-14-025
PCAM # PCAM-F35-13965 (F-35 Program)
PCAM Date: February 16, 2015
POP:  07/2015 – 12/2018
LRIP: 9-10

1.) In October 2014, ESL submitted a noncompetitive proposal to LM Aero which exceeded the TINA threshold and, thus, required a rate audit (cost analysis).   On November 17, 2014 the PCAM was submitted to the USA which stated that an audit had been requested of DCAA.  This was a known false statement.  No such audit had been requested and no waiver for it had been requested. This contract was then negotiated by LMAero with the USA, but without a cost analysis of ESL's rates and factors.

2.) Ultimately, the DCAA did perform an audit for other ESL contracts, the results of which LMAero received in May 2015 and April 2016. These other DCAA audit results coincidently constitute cost and pricing data.  The results of these other audits could have been applied via a waiver, to the submitted proposal as it covered the same periods of performance and the same rates, but in fact was not. LMAero had the relevant ESL DCAA audit results from the other contracts in their possession well before the date of agreement with the USA on price for both LRIP 9 and LRIP 10.  The PNM and PCAM submitted to the USA in support of the Bill of Material price for ESL contained known

inaccurate and non-current information. The undisclosed data was of material significance to agreement on price and was of the type and nature that the USA would have reasonably expected to have an impact on price negotiations. The USA relied on that information to its financial detriment as it caused an increase in the contract price. Coextensive with this misrepresentation to the USA, LMAero has been unable to reach an agreement with ESL to accept the significant reduction of contract monies paid to ESL on submitted contract claims for payment that would otherwise be required by the above audit results.

3.) The connection between these two events is the execution of a deliberate LMAero perpetrated scheme to pass the buck onto the American Taxpayer by enabling throughout the life of this contract the continuing fraudulent overcharging $9.6 million in contract claims to ESL in violation of TINA/FAR.

D.    ELBIT SYSTEMS LIMITED ("ESL") #3 – Israel

Proposal date – December 22, 2014
Proposal Value – ESL for ESW - $9,204,577
RFP # JSFLRIP9-14-025
PCAM # PCAM-F35-13965 (F-35 Program)
PCAM Date: February 16,, 2015
POP:  07/2015 – 12/2018
LRIP: 9-10

1.) In December 2014, ESL submitted a noncompetitive proposal to LMAero contained within an Elbit Fort Worth ("ESL-FW") proposal. The proposal exceeded the TINA threshold and, thus, required a rate audit (cost analysis). In February 2015, a PCAM was submitted to the USA which stated that an

audit had been requested of DCAA and would be incorporated upon its receipt.   This was a false statement.   No audit had been requested and no waiver had been requested.   This contract was then negotiated without a cost analysis of ESL's rates and factors. Indeed, in September 2015, a PNM was executed. No mention of an audit of ESLs rates and factors was made therein.

2.) Ultimately, the DCAA did perform an audit for other contracts, the results of which LMAero received in May 2015 and April 2016. These DCAA audit results coincidently constitute cost and pricing data.   The results of these audits could have been applied via a waiver, to the submitted proposal as it covered the same periods of performance and the same rates, but were not. LMAero had the ESL DCAA results from the other audits in their possession well before the date of agreement with the USA on price for both LRIP 9 and LRIP 10.   The PNM and PCAM submitted to the USA in support of the Bill of Material price for ESL contained known inaccurate and non-current information.   The undisclosed data was of material significance to agreement on price and was of the type and nature that the USA would have reasonably expected to have an impact on price negotiations.   The USA relied on that information to its financial detriment as it caused an increase in the contract price.   Coextensive with this misrepresentation to the USA, LMAero has been unable to reach an agreement with ESL to accept the significant reduction of contract monies paid to ESL on submitted contract claims for payment that would otherwise be required by the above audit results.

3.) The connection between these two events is the execution of a deliberate LMAero perpetrated scheme to pass the buck onto the American Taxpayer by enabling throughout the life of this contract the continuing fraudulent overcharging $1.7 million in contract claims to ESL in violation of TINA/FAR.

17.    LMAero has intentionally pursued a scheme that encourages, enables and deliberately ignores fraudulent defective costs/pricing strategies of its subcontract suppliers with goal of increasing LMAero revenue under federal contracts. More specifically, in the 2011/2012 time frame, upon the discovery by Ferguson's audit group of uncovering several instances wherein Supply Chain was using LM Aero Subcontract Audit results or DCAA results that were more than 12 months old to certify subcontract cost/pricing negotiations, they launched a special project to assess the extent of the practice. The results of the assessment, as was reported to Tom Simmons (Supply Chain Vice President), Bob Mack (Price Cost Analysis Director) and Leo Wegemer (Legal Vice President) were that for thirty percent of the proposals that could be assessed, LMAero negotiations with the suppliers  were based on inadequate Cost Analysis. Inadequate cost analysis poses high risks to the company and deliberate ongoing inadequate cost analysis constitutes a fraud on the USA once a certification thereon is submitted and/or claims are made/paid under the contract (as was, and is, occurring). The project was called the "Supply Chain Management Field Pricing Audit Waiver Process Assessment" and was issued in February 2012. The report and the fraud issues it implicated percolated amongst LMAero management without action for a lengthy period of time. Ultimately, in 2015, LMAero's upper management communicated to Ferguson and her group its position on the issues they had raised, and which Ferguson kept raising in the interim as ongoing audits revealed a pattern. Specifically, LMAero's

CFO, Tom Bradley, informed her and her group that undetected supplier fraud results in higher revenues for LMAero and that in uncovering same, they were costing him (meaning LMAero) money. The message Bradley to Ferguson and her audit group delivered was unmistakable: look the other way on supplier fraud.

18.     These are only a few examples of how LMAero Supply Chain repeatedly utilizes inadequate or non-existent analysis on supplier costs in order to definitize purchase orders and pass on higher prices to the USA. These actions by LMAero Supply Chain analysts and management are not isolated, but rather are part of a intentional scheme conceived and implemented by LMAero with full awareness that they likely will not be audited by the USA during negotiations and the higher costs will be reimbursed to LMAero with increased profits and associated overheads, provided that Ferguson's Subcontract Audit Group is kept in check.

19.     LMAero's aforesaid actions with respect to the above contracts constitute a fraud against the USA in that they are violations of the following federal statutes:

A.     making false statements to the government, 18 U.S.C. § 1001 through improper or false pricing certifications made to the USA and also covering up a scheme to submit fraudulent claims for payment of costs under these contracts;

B.     presenting false claims for contract payments, regardless of whether paid or not, 18 U.S.C. §§286-287, 10 U.S.C. § 3729, 10 U.S.C. § 2324;

C.     mail fraud and/or wire fraud, 18 U.S.C. § 1341 and 18 U.S.C. § 1343, as the false statements, false claims presented to the government involved the use of United State Postal Mail, telephone lines and/or internet wire access;

D.     collusive agreement (*i.e.*, a conspiracy), 31 U.S.C. § 3729 and 18 U.S.C. § 371, between and amongst LMAero employees/officers/vice principals and subcontractor officials to

agree to conceive and implement a systematic scheme to defraud the USA by knowingly accepting, passing through and/or certifying to the USA contract pricing overcharges resulting from known false or inaccurate pricing information submitted by suppliers;

   D. violation TINA, 10 U.S.C. § 2306 via violations of the FARs and/or prime contract clauses enforced therein, including, but not limited to, FAR 15.404-1, 15.801, 31-205 as well as DFARS 252.244-7001.

20. In making her above described complaint to LMAero, Ferguson reasonably believed, and continues to reasonably believe, that LMAero was and continues to be complicit in perpetrating a large scale fraud against the USA and the American taxpayer.

21. Ferguson is the primary whistleblower source of LMAero's fraudulent actions as described herein and there has not been a prior public disclosure of these actions.

## V.
## CAUSE OF ACTION

21. Ferguson fully incorporates each and every fact set forth in paragraphs 1 through 21 above with respect to each and every cause of action set forth below.

   A. *Count One – Violation of False Claims Act*

22. False Claims Act liability attaches to any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to a false record or statement made to get a false or fraudulent claim paid by the government. 31 U.S.C. § 3729(a)(1)&(2).

23. Under the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information:

   (1) has actual knowledge of the information;

   (2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b).

24.     The False Claims Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money. *Id.*

25.     By virtue of the acts described above, Defendant LMAero knowingly caused and/or continues to cause to be submitted, false or fraudulent certifications and/or claims to the USA for payment under multiple large defense contracts, to include, at a minimum the aforementioned two.

26.     The United States Government paid and continues to pay such false claims in excess of ten million dollars ($10,000,000.00+).

27.     By reason of Defendant LMAero's acts, the United States Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

## VI.
## JURY DEMAND

30.     Ferguson hereby exercises the right to trial by jury on claims, issues and defenses in this action.

## VII.
## PRAYER

*WHEREFORE*, Relator Maria del Carmen Gamboa Ferguson, on behalf of herself and the Unites States of America, respectfully prays that this Court advance this case on the docket, order a speedy jury trial at the earliest practicable date, cause the action to be in every way expedited, and, upon final hearing, order as follows:

A.     That Defendant be ordered to cease and desist from violating 31 U.S.C. § 3729

*et seq.*;

B.     That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;

C.     That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

D.      That Relator be awarded all costs of this action, including attorneys' fees and expenses; and

E.     That Relator recover such other relief as the Court deems just and proper.


DATED: March 7, 2017.

Respectfully submitted,

**LAW OFFICE OF DALE M. RODRIGUEZ**
555 Republic Drive, 2nd Floor
Plano, Texas 75074
Phone: 214-713-4665
Fax:    888-717-7542
dale@dmrlawoffice.com


By:   /s/ Dale M Rodriguez
        Dale M. Rodriguez
        *Texas Bar No. 00788302*
        *Florida Bar No. 0780081*

*Attorney for Plaintiff/Relator Ferguson*

## CERTIFICATE OF SERVICE ON THE UNITED STATES OF AMERICA

I hereby certify that on March 7, 2017, I served, via United State Postal Certified Mail, RRR, the foregoing Qui Tam Original Complaint, along with Relator's Disclosure Statement, on the United States of America as follows:

Jeff Sessions, *Esq.*
Attorney General, United States of America
*c/o* Lee J. Loftus
    Assistant Attorney General for Administration
U.S. Department of Justice
    Justice Management Division
950 Pennsylvania Avenue, NW, Room 1111
Washington, DC 20530

*--and--*

John R. Parker, *Esq.*
United States District Attorney
    for the Northern District of Texas
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699

                          /s/Dale M. Rodriguez
                          Dale M. Rodriguez

ORIGINAL

JS 44 (Rev. ...) CIVIL COVER SHEET

RECEIVED
MAR - 7 2017
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Maria del Carmen Gamboa Ferguson

**DEFENDANTS**
Lockheed Martin Aeronautics Company,
Lockheed Martin Corporation d/b/a Lockheed Martin Aeronautics Company

(b) County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Dale M Rodriguez
555 Republic Drive, 2nd Floor
Plano, Texas 75002

Attorneys *(If Known)*

**3-17CV0664-B**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☒ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. § 3730(b)
Brief description of cause:
Qui Tam False Claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED PENDING OR CLOSED CASE(S) IF ANY
*(See instructions)*
JUDGE Hon. Jane Boyle
DOCKET NUMBER 3-16CV2995-B

DATE
03/07/2017

SIGNATURE OF ATTORNEY OF RECORD
/s/Dale M Rodriguez

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE